FILED
2009 OCT -2 PM 3: 17
US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BREVARD COUNTY, FLORIDA,

Plaintiff,

v.

PRICELINE.COM INCORPORATED;
TRAVELWEB LLC; TRAVELOCITY.COM LP;
SITE59.COM, LLC; EXPEDIA, INC.;
HOTELS.COM, L.P.; HOTWIRE, INC.;
TRAVELPORT AMERICAS, INC.; TRIP
NETWORK, INC. (d/b/a CHEAP TICKETS); and
ORBITZ, LLC,

Defendants.

No. 6:09-cv-1695-ORL-31GJK

COMPLAINT AND DEMAND
FOR JURY TRIAL

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Brevard County, Florida ("Plaintiff" or "Brevard County"), a political subdivision of the State of Florida, alleges as and for its Complaint against the Defendants (as defined below), upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its attorneys, as follows:

### INTRODUCTION

1.  This suit is brought by Plaintiff, in its capacity as a taxing authority, against Defendants for their continuing failure to remit Tourist Development Tax (the "Tourist Development Tax") imposed under Section 10-23 of the Code of Ordinances of Brevard County, Florida (the "Brevard County Code.")

2. Defendants conduct the business of acquiring and then selling hotel rooms through a two-step process: first, they acquire hotel rooms from hotels at low **wholesale** rates; second, Defendants sell the rooms they acquired to consumers at higher **retail** rates.

3. Although Defendants charge customers the Tourist Development Tax based on the higher retail rate, Defendants do not remit any Tourist Development Tax directly to Plaintiff, and only a portion of the Tourist Development Tax is ever paid to Plaintiff.

4. Defendants' acts of tax evasion give rise to the Plaintiff's claims herein for: (1) violation of the Brevard County Code; (2) unjust enrichment; (3) conversion.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over each of the Defendants because (i) all or a substantial part of the transactions and conduct giving rise to the causes of action pled herein occurred in this Judicial District; and ii) all of the Defendants have transacted – and continue to transact – substantial business within this Judicial District and possess general contacts within this Judicial District.

6. Jurisdiction over each of the Defendants is proper under 28 U.S.C. § 1332(a) as the Plaintiff is a resident of a different state than each of the Defendants, and the amount in controversy is greater than $75,000.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8. Plaintiff Brevard County is a political subdivision of the State of Florida, and is thus a taxing authority empowered to levy excises on all vendors of hotel accommodations within its jurisdiction, including the Tourist Development Tax authorized under Florida Statutes, section 125.0104 (the "Local Option Tourist Development Act").

9. Defendants can be grouped into four distinct groups, as subsidiaries or indirect subsidiaries of either: A) Priceline; B) Travelocity; C) Expedia; or D) Orbitz

### A. The Priceline Defendants

10. Defendant *Priceline.com Incorporated* ("Priceline") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

11. Defendant *Travelweb LLC.* ("Travelweb") is a Delaware corporation with its principal place of business in Dallas, Texas. Defendant Travelweb is an indirect subsidiary of Defendant Priceline.

12. Defendants Priceline and Travelweb will be collectively referred to as the "Priceline Defendants."

### B. The Travelocity Defendants

13. Defendant *Travelocity.com LP.* Defendant Travelocity.com, LP ("Travelocity") is a Delaware limited partnership with its principal place of business in Texas. Defendant Travelocity LP is an indirect subsidiary of Sabre Holdings Corporation.

14. Defendant *Site59.com LLC* is a Delaware limited liability company with its headquarters in New York, New York. Defendant Site59.com, LLC is an indirect subsidiary of Sabre Holdings Corporation.

15.     Defendants Travelocity and Site59.com LLC will be collectively referred to as the "Travelocity Defendants."

C.    **The Expedia Defendants**

16.     Defendant *Expedia, Inc.* Defendant Expedia, Inc. ("Expedia") is a Washington corporation with its principal place of business in Bellevue, Washington.

17.     Defendant *Hotels.com, L.P.* Defendant Hotels.com, L.P. ("Hotels.com LP") is a Delaware limited partnership with its principal place of business in Dallas, Texas. Defendant Hotels.com, LP is a wholly-owned subsidiary of Defendant Hotels.com.

18.     Defendant *Hotwire, Inc.* Defendant Hotwire, Inc. ("Hotwire") is a Delaware corporation with its principal place of business in San Francisco, California. Defendant Expedia is the parent company of Defendant Hotwire.

19.     Defendants Expedia, Hotels.com LP, and Hotwire will be collectively referred to as the "Expedia Defendants."

D.    **The Orbitz Defendants**

20.     Defendant *Travelport Americas, Inc.* ("Travelport") is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Travelport was formerly known as Cendant Travel Distribution Services Group, Inc. Defendant Travelport is, upon information and belief, a subsidiary of Orbitz, LLC.

21.     Defendant *Trip Network, Inc. (d/b/a CheapTickets)* ("CheapTickets) is a Delaware corporation with its principal place of business in Honolulu, Hawaii. Upon information and belief, Defendant CheapTickets is an indirect subsidiary of Orbitz Worldwide, Inc.

22.     Defendant *Orbitz, LLC* is a Delaware corporation with its principal place of business in Chicago, Illinois.

23.     Defendants Travelport, CheapTickets, and Orbitz, LLC will be collectively referred to as the "Orbitz Defendants."

## SUBSTANTIVE ALLEGATIONS

24.     As recently as 1997, the concept of an "internet travel company" or "ITC" – an entity organized to effectuate travel plans, reservations and purchases via the world wide web – was virtually unknown. In recent years, the internet travel industry has seen explosive growth. By some estimates, more than half of all hotel bookings in the United States are made online, many through internet travel companies owned by the Defendants.

25.     Through their web portals, the Defendants allow consumers to rent hotel rooms in many different hotels throughout the country and the world. These companies offer their services to hotels and consumers through two different business models: the "Agency Model" and the "Merchant Model."[1]

26.     In the early years of ITCs, the Agency Model was the primary method of business, but in recent years the Merchant Model has grown to represent a majority of total online bookings through the Defendants' internet travel sites.

---

[1] The two models are described in the 2002 annual report of Defendant Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, and the 2004 Annual Report on Form 10-K as filed with the SEC of IAC/Interactive Corp. (the parent company – at that time – of Expedia.com, Hotwire.com and Hotels.com), p. 9.

COMPLAINT                                                           - 5 -

**The "Agency Model"**

27.     Under the Agency Model, the Defendants charge a "service fee" to hotel operators on a transaction basis for booking customers into rooms at a given hotel. Recently, the Defendants have also charged a "booking fee" of approximately $5.00 per transaction directly to the consumers involved as well.

28.     Under the Agency Model, the hotel itself sets the price of its rooms and is the merchant of record for the transaction. The transient visitor pays the hotel directly for the room, the hotel collects the Tourist Development Tax, and the hotel remits the tax to the Plaintiff.

Defendant Expedia described the Agency Model as follows in its 2002 Annual report:[2]

> Under the agency model, **we act as an agent in the transaction**, passing a customer's reservation to the travel supplier (airline, hotel, car rental company or destination-service provider). We often receive a commission from the travel supplier for our services as an agent. In an agency transaction, **the supplier sets the retail price paid by the customer**, and **the supplier is the merchant of record for the transaction**. (Emphasis added.)

29.     The Defendants do not pay any occupancy taxes on the fees they receive from the hotels or from the consumers related to making the hotel reservations, as they do not maintain an inventory of rooms, set the cancellation policies, or have any financial responsibility to the transient visitor.

**The "Merchant Model"**

30.     Under the Merchant Model, the Defendants do not function merely as service providers collecting a fixed transaction fee. Rather, the Merchant Model consists of two independent but related transactions whereby an internet travel company, including each of Defendants: (i) first purchases and takes title to inventories of hotel rooms at negotiated rates from the hotels ("wholesale" rates); and (ii)

---

[2] 2002 annual report of Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, p. 4.

then re-sells the rooms to consumers at higher rates ("retail" rates), keeping the difference as profit. This purchase and re-sale "Merchant Model" far more profitable for the Defendants, and has become their dominant business paradigm in recent years.

31. Under the Merchant Model, the Defendants purchase rooms from hotels at the lower wholesale rate using their own credit. The selling hotels collect and remit to the applicable taxing authority hotel room taxes based on that lower wholesale rate.

32. The Defendants then rent hotel rooms to consumers at a higher retail rate. The consumers pay through a credit card transaction in which the particular Defendant is the merchant of record. In their transactions with consumers, the Defendants charge the applicable hotel room tax, but do not remit any such taxes to the taxing authority.

33. These merchant transactions were described in public filings by Expedia as follows:

> Under the merchant model, **we receive inventory** (hotel rooms, airline seats, car rentals, destination services) from suppliers at negotiated rates. We determine the retail price paid by the customer and **we then process the transactions as the merchant of record for the transaction**. Acting as a merchant enables us to achieve a higher level of gross profit per transaction compared to the agency model and allows us to provide better prices to customers compared to agency transactions. Merchant transactions comprised 58% of our total revenues in 2002 and are derived from the difference between what we pay for the inventory and what we charge the customer. (Emphasis added.)[3]

34. Similarly, Priceline.com specifically admitted that it actually "purchases" and "takes title" to hotel rooms before reselling them to end users:

> For most of these transactions, we establish the price we will accept, have total discretion in supplier selection, **purchase and take title to the particular product and are the merchant of record**. Consumers agree to hold their offers open for a specified period of

---

[3] 2002 annual report of Expedia, Inc. as filed with the SEC on Form 10-K on March 31, 2003.

COMPLAINT                          - 7 -

time to enable us to fulfill their offers from inventory provided by participating sellers. Once fulfilled, offers generally cannot be canceled. (Emphasis added.)[4]

35. Defendant Orbitz admitted that it assumes the risk of loss in these merchant transactions because it "receive[s] inventory directly from a hotel" that it "then mark[s]-up and sell[s] to consumers:"

> Our hotel agreements include . . . merchant hotel contracts with certain hotels, hotel management groups and hotel chains that give us access to discounted negotiated rates **that we then mark-up and sell to consumers on a prepaid basis.**
>
> * * *
>
> Our strategy calls for us to increase the number of hotel rooms we can offer under our Orbitz Merchant Hotel program based on merchant arrangements we make directly with individual hotel properties and independent chains. Under the Orbitz Merchant Hotel program, **we receive inventory directly from a hotel at a negotiated rate, and we determine the retail price at which we choose to offer it to the consumer.**
>
> * * *
>
> **We must also pay net rates to hotels in the event merchant hotel bookings sold on our website are purchased fraudulently.** (Emphasis added).[5]

36. Hotels.com also identified itself as a "reseller" of hotel rooms obtained from the hotels:

> We contract with hotels and other lodging properties in advance for volume purchases and guaranteed availability of rooms at wholesale prices **and resell these rooms to consumers** through our websites, third-party affiliated websites and our toll-free call centers. (Emphasis added.)[6]

37. Likewise, Travelocity, Inc. also distinguished its purchase and re-sale transactions under the Merchant Model from those where it merely provided a service:

> In order to increase its sales of higher margin products, Travelocity's business plan calls for it to increase **merchant model sales** pursuant to which **Travelocity serves as the**

---

[4] Priceline.com annual report for the year ending Dec. 31, 2002 on Form 10-K as filed with the SEC on March 15, 2003, p. 5.

[5] 2003 annual report of Orbitz, Inc. as filed with the SEC on Form 10-K on March 18, 2004, pp. 11, 28, 73.

[6] 2000 Annual Report of Hotel Reservations Network, Inc. (later renamed Hotels.com) filed on Form 10-K with the SEC on April 2, 2001, p.18.

COMPLAINT                                                                  - 8 -

**merchant of record in the transaction rather than as a sales agent.** In the merchant business, suppliers make inventory, such as airline seats, hotel rooms, car rentals, cruises, and vacation packages, available to Travelocity at wholesale or "net" rates. The merchant of record then sets the retail price that the customer pays and processes the transaction. **The merchant business generally delivers higher revenue per transaction than comparable sales under the agency model, in which Travelocity acts as an agent in the transaction, passing a customer's reservation to the travel supplier and receiving a commission from the supplier for its services.** (Emphasis added.)[7]

38. As Defendants have admitted in these sworn public filings, Defendants collect the hotel rental charges from consumers.

**The Tourist Development Tax**

39. Plaintiff imposes a Tourist Development Tax, which shall be collected from guests and remitted by, *inter alia,* "the person receiving the consideration for the lease or rental." The tax shall be collected from the consumer "at the time of payment of the consideration of such lease or rental." BREVARD COUNTY CODE § 102-118. The tax is 5.0% of the total "rental" charged to the transient guest. BREVARD COUNTY CODE § 102-117(a)-(d).

40. Defendants charge consumers the full Tourist Development Tax based on the retail rate paid by consumers, but remit none of that amount to Brevard County. In the course of the entire Merchant Model transaction, Brevard County is paid only that portion of the Hotel Room Tax that the hotels collect (and presumably duly remit) based on their sale of rooms to the ITCs at the lower wholesale rate. Defendants remit no taxes in connection with the higher-priced retail transaction, even though the ITCs collect the full Hotel Room Tax based upon the full retail rate paid by consumers. Upon information and belief, the amount of such underpayment is in the millions of dollars, and exceeds $75,000 for each of the Defendants.

---

[7] 2001 annual report of Travelocity.com, Inc., as filed with the SEC on March 26, 2002, p.6

COMPLAINT                                -9-

## CAUSES OF ACTION

### COUNT I
### (Violation of Section 102-118 of Brevard County Code)

41. Plaintiff Brevard County repeats and realleges the allegations set forth in Paragraphs 1 through 40, *supra*, as if fully set forth herein.

42. Plaintiff Brevard County is a tax authority empowered to levy and collect Tourist Development Taxes pursuant to law.

43. As set forth herein, Defendants: 1) receive the consideration for the rental of hotel and/or motel rooms located in Brevard County; 2) have an ownership interest in the hotel and/or motel rooms in Brevard County; and 3) conduct the operation of the hotel and/or motel rooms located in Brevard County.

44. Defendants had a duty to collect and remit Tourist Development Taxes to Brevard County based upon the "retail" price of the rooms sold or rented to consumers.

45. Defendants have failed to remit to Brevard County the amounts due and owing pursuant to the Brevard County Code § 102-118.

46. Failure to convey these taxes to the County has generated a debt owed by Defendants to Brevard County, which the Plaintiff hereby seeks to recover pursuant to Brevard County's legal collection authority. Brevard County is further entitled to penalties, costs and/or interest owed as a result of Defendants' failures to remit appropriate tax sums, in accordance with the Brevard County Code and otherwise.

47. Defendants also failed to state separately the amounts due under the Tourist Development Tax upon invoices, receipts or other statements or memorandum of the rent given to the rentor of the hotel and/or motel rooms at the time of payment.

48. The precise amount of all recoverable damages, penalties and/or interest will be determined at time of trial.

## COUNT II
### (Unjust Enrichment)

49. Plaintiff Brevard County repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*, as if fully set forth herein.

50. As a result of their conduct alleged herein, Defendants have unjustly received and retained a benefit to the detriment of Plaintiff. Defendants know that they are privileged to conduct business within Plaintiff's county limits and know that one consequence of that privilege is that they are required to collect the Tourist Development Taxes on behalf of Plaintiff.

51. Defendants do collect the Tourist Development Tax from customers, yet fail to remit it to the Plaintiff. Instead, the Defendants pocket those collected taxes, and are therefore unjustly enriched. Defendants' retention of this tax violates fundamental principles of justice, equity, and good conscience.

52. By failing to remit the collected taxes, the Defendants obtained a benefit without justly compensating the Plaintiff.

53. Plaintiff had and has an immediate right to possession of the funds. Plaintiff made a pre-filing demand to each of the Defendants to immediately pay the unjustly received benefit to the Plaintiff, but Defendant refused to pay these funds to the Plaintiff.

54. Plaintiff is therefore entitled to the return from Defendants of all Tourist Development Tax monies that Defendants collected and were required to, but did not, pay over to Plaintiff, plus any interest and other amounts provided for by law or equity on said amounts from the date the tax monies

were required to have been remitted to Plaintiff. The specific sums of money unlawfully received and retained by Defendants is identifiable from information and records in their possession or control.

### COUNT III
### (Conversion)

55. Plaintiff Brevard County repeats and realleges the allegations set forth in Paragraphs 1 through 54, *supra*, as if fully set forth herein.

56. At all times relevant hereto, funds which were the legal property of Plaintiff were in the possession and under the control of Defendants. Defendants, through the conduct alleged herein, wrongfully and without authorization deprived Plaintiff of tax revenue due and owing to Plaintiff. The funds related to the Tourist Development Tax based upon the entire "retail" price of the rooms belonged to Plaintiff at all times following their collection from consumers.

57. Plaintiff had and has an immediate right to possession of the funds. Plaintiff made a pre-filing demand to each of the Defendants to immediately pay the unjustly received benefit to the Plaintiff, but Defendant refused to pay these funds to the Plaintiff.

58. As a direct and proximate result of Defendants' conduct, Plaintiff has been wrongfully deprived of the funds, and has suffered, and will continue to suffer, damages in an amount to be determined at time of trial.

### COUNT IV
### (Injunctive Relief)

59. Plaintiff Brevard County repeats and realleges the allegations set forth in Paragraphs 1 through 58, *supra*, as if fully set forth herein.

60. Defendants have failed to properly pay taxes to the Plaintiff.

61. As set forth in Counts I, II and/or III, Defendants have violated one or more cognizable legal rights of the Plaintiff.

62. Defendants continue to retain monies due and owing the Plaintiff as a result of Defendants' failure to pay taxes to the County.

63. Plaintiff has no adequate remedy at law by virtue of Defendants' course of conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order of this honorable Court as follows:

**A.     Entering judgment in favor of Plaintiff and against Defendants for: (i) violations of Brevard County Code § 102-118, *et seq*.; (ii) unjust enrichment; and (iii) conversion.**

**B.     Awarding Plaintiff its full damages, inclusive of all tax amounts owed, all applicable penalties and interest, and reasonable attorneys' fees and costs;**

**C.     An accounting of the monies that the Defendants have collected as taxes levied by Brevard County and the amount of tax monies collected which were not remitted to the County;**

**D.     A permanent injunction requiring the Defendants to collect and remit to the County Tourist Development Tax calculated on the amount which the consumer or renter of the hotel room is charged by the Defendants exclusive of other taxes and exclusive of separately identified service charges that are not attributable to the renting of the hotel room;**

E.    Granting such further relief as the Court deems just, fair and reasonable; and

F.    Plaintiff hereby demands a trial by jury.


DATED: October __, 2009.

                                        Respectfully submitted,

Michael C. Maher (Fla. Bar No. 92290)
Steven R. Maher (Fla. Bar No. 887846)
Stephen G. Charpentier (Fla. Bar No. 328006)
**The Maher Law Firm**
631 West Morse Boulevard, Suite 200
Winter Park, FL 32789
Telephone:   (407) 839-0866
Facsimile:    (407) 425-7958

Karl P. Barth
Keri L. Greenheck
**LOVELL MITCHELL & BARTH, LLP**
911 Western Ave., Suite 308
Seattle, WA 98104
Telephone:   (206) 432-8330
Facsimile:   (206) 432-8331

Christopher Lovell
Gary S. Jacobson
**LOVELL STEWART HALEBIAN LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone:  (212) 608-1900
Facsimile:  (212) 719-4775

*Counsel for Plaintiff Brevard County*